MATHES, Appellant, *v.* NISSLER et al., Respondent.

[Submitted November 13, 1895. Decided November 25, 1895.]

Partition—*Joint patentees—Parol agreement.*—Where several parties enter upon and occupy separate parts of a tract of public land and each make valuable improvements upon their respective parts with the consent of each other, and, having agreed to patent the land with the understanding that each was to own his part in severalty, continued, after the title was obtained, to so separately occupy and improve their respective parts for years, this constitutes a parol partition of the land which was not within the operation of the statute of frauds, and by which each, owner acquired an equitable title to the tract occupied by him.

*Appeal from Second Judicial District, Silver Bow County.*

Partition. Judgment was rendered for the defendants below by Speer, J. Affirmed.

Statement of the case by the justice delivering the opinion.

This action is brought for the partition of certain real estate situated in Silver Bow county.

It appears from the record that plaintiff, Mathes, and defendants Nissler and Stolte, and one Herman Otten, located the land in controversy as a placer mining claim in April, 1886 and on the 5th day of August, 1889, a patent was issued to them therefor. It further appears from the record that the plaintiff and said Nissler, Stolte and Otten entered upon the land in controversy in 1871, when the same was a part of the public domain, and each occupied separate and distinct parts or parcels thereof, and each made lasting and valuable improvements on the separate parts occupied by them respectively, consisting of dwelling houses, hotels, stores, brewery buildings, etc., and that they each continued to occupy and hold such separate parts of the land in dispute until the year 1886, when, becoming apprehensive that they might lose their improvements for want of a title to the land, they agreed that they would locate and patent the land as placer mining ground, with the understanding that, when they obtained the government title, each was to own in severalty that part of the

ground which they had each so long, and then, possessed, and had improved separately; that the land was located and patented under and in pursuance of said agreement; that, after the land was located and patented, they each continued to occupy the separate parts of ground they had theretofore occupied by the consent of each other, each improving his own separate part thereof at his own expense, and each paying taxes on and exercising sole control and ownership over such separate parts of the land as had been so long separately occupied by him; that neither of the parties to said agreement ever claimed any interest in the separate parts of the land so occupied and improved by the others; that the separate parts of the land so occupied and improved by the respective parties were well known to them all; that each of the parties recognized and consented to the occupancy and improvement of the separate parts of the ground by the respective parties.

Before the commencement of this suit, Herman Otten conveyed his interest in the ground by deed to defendant Nissler. Defendant Keulsch claims no interest in the ground. Defendant Birdsall claims to own a specified part or lot of the ground by virtue of a contract in writing made between the patentees and defendant Peterson, which contract Peterson assigned to Birdsall.

The foregoing statement shows substantially the status of the parties with reference to the land in dispute at the time plaintiff instituted this suit, in 1893, claiming to be the owner of the undivided one-fourth of the premises, and asking that the same be partitioned. The case was tried to the court without a jury. The court, in its special findings, found the facts to be as stated above.

. The court entered a decree that the plaintiff and the defendants Nissler and Stolte were each entitled to the separate parts of the land occupied and improved by them respectively under the agreement shown in the statement; and, further, that defendant Nissler was entitled to the interest in the land purchased by him of Otten, one of the original occupants, locators and patentees. The court further found that the residue

of the land, being that part not occupied or improved by either of the parties, was susceptible of division in kind, and decreed that it be partitioned among the parties in accordance with their respective rights. Plaintiff appeals from the decree of the court.

*F. T. McBride,* for Appellant.

*Forbis & Forbis,* for Respondents.

PEMBERTON, C. J.—As will be seen from the foregoing statement, the defense interposed in this action by defendants Nissler and Stolte was that they and the plaintiff and Otten had made a parol partition of the land in controversy, as far as the separate parts of the land which they had so long respectively occupied, and placed lasting and valuable improvements upon, with the knowledge and consent of each other, were concerned and involved. The court held that the parties having occupied and possessed the several separate parts of the land with the consent of each other, and having, at their own expense, made lasting and valuable improvements thereon, and each of the parties having exercised separate control and ownership thereof for years, constituted a parol partition of the lands, as far as such separate parts were concerned, and that each of the parties was entitled to have such separate part thereof decreed to him in this proceeding.

The appellant contends that parol partition of the land, pleaded by defendants, is within the operation of the statute of frauds, and is, for that reason, null and void. This raises the only material question involved in the case. Upon this question the authorities are not uniform.

Freeman, in his work on Cotenants and Partition, says a voluntary partition of lands could be made at common law between cotenants, but that, according to a decided majority of English and a slight majority of American cases, the statute of frauds interposes an insuperable obstacle to a valid parol partition. (§ 397.) After citing authorities *pro* and *con,* Freeman, in section 398, says: "It is evident that the proposi-

tion that a parol partition of the lands of cotenants, when followed by possession taken or retained in pursuance of it, is binding upon them, is gaining rather than losing ground. There may be some difference of opinion respecting the reasons on which the proposition ought to rest. Some may regard the parol partition, consummated by such possession, as sufficient to vest the parties with the full legal title; others may treat it as giving rise to an estoppel, against which either party is powerless to deny that a partition has been made; while a third reason may be urged, that each cotenant is vested with the equitable title to the lands set apart to him, and, with its aid, is able to defend his possession, and to control the legal title,— to prevent its assertion against him, and to compel its transfer to him if he desires to be vested with it also. Practically, it makes little difference which of these several views prevails, for, under either, each cotenant is entitled to retain the land so partitioned to him."

In *McKnight* v. *Bell*, 135 Pa. St. 358, 19 Atl. 1036, a well-considered case, involving the question under discussion, the court says: "A partition which merely severs the relation existing between tenants in common in the undivided whole, and vests title to a correspondent part in severalty, is not such a sale or transfer of title as will be affected by the statute of frauds. The reason of this rule rests in this: That the partition is not an acquisition or purchase of land, nor is it in any proper sense a transfer of the title to the land; it is a mere setting apart in severalty of the same interest held in common, not in other, but in the same lands. A parol partition, when fair and equal, and followed by due execution, has been held to bind even infants and *femes covert*; and a judgment or a mortgage or the lien of a legacy against one of the tenants in common will, after the partition, *ipso facto* cease to bind the whole as an entirety, and attach to his purpart. ( *Willard* v. *Willard*, 56 Pa. St. 119; Darlington's Appropriation, 13 Pa. St. 430; *Bavington* v. *Clarke*, 2 Pen. & W. 115; *McLanahan* v. *Wyant*, Id. 279; Long's Appeal, 77 Pa. St. 151.) The result of such a partition does not confer a merely

equitable right, but a right recognized and which will be enforced at law. Ejectment would not lie to compel payment of a sum stipulated in the nature of owelty; nor in the absence of a contract to that effect, would a bill lie to enforce a conveyance. If the parties do not consummate the transaction by writing, it is because they choose to do otherwise.'' This seems to be the settled law in Pennsylvania.

In *Hauk* v. *McComas*, 98 Ind. 460, a case in which a mother and son had made a parol partition of land, under circumstances very much like the case at bar, and under the terms of which partition the son remained in possession of the part allotted to him under the parol agreement, the court said: "He did not take, but kept, possession of the parcel allotted him in pursuance of such partition. Does this make any difference? We think not. Retaining possession and making improvements are sufficient to render the partition valid as to him. Strictly speaking, a tenant in common, upon partition, does not take, but retains, possession of the parcel allotted him. In contemplation of law, all are in possession, and, when a division is made, each retains the portion allotted him. Such possession becomes exclusive, and in that sense he takes possession, but not in the sense of actually taking possession of land to which before that time he had no claim. Nor does the law require such possession to be taken. If it did, partition of land actually occupied by the tenants could not be made by parol. All that is required is a several occupancy in accordance with the division made. This, when followed by such improvements as were made, will, according to all the authorities, render the partition binding. (*Tomlin* v. *Hilyard*, 43 Ill. 302; *Manly* v. *Pettee*, 38 Ill. 128; *Piatt* v. *Hubbell*, 5 Ohio 243; Freem. Coten. § 402.) In addition to this, upon the faith of such partition, the improvements were made with the knowledge and consent of the widow, who encouraged her son to make a portion of them. Under such circumstances, upon the plainest principles of equity and good conscience, she was thereafter estopped to dispute the validity of such parol partition, and the appellees, who claim through her, are likewise estopped.''

In *Rountree* v. *Lane* (S. C.) 10 S. E. 941, the court says: "We do not think it necessary to go into the question as to what estate the Burkhalter deed gave to Mrs. Lane. Assuming as the plaintiffs contend, that it only gave a life estate, with remainder over to her heirs or purchasers, we see no reason to doubt that, after the death of Mrs. Lane, her children, all being alive and of full age, could effect an oral partition among themselves; each one having his or her parcel marked out by a plat, giving the metes and bounds, and the parties being placed in exclusive possession of the parcels assigned to them, respectively. In *Kennemore* v. *Kennemore*, 26 S. C. 251, 1 S. E. 881, it was held that a parol partition is binding upon the parties if 'there is sufficient proof of part performance to take the tranaction out of the statute of frauds;' and 'actual possession is deemed the most satisfactory evidence of part performance,' etc. The master found, and the circuit judge concurred with him, that there had been an oral partition between all the Lane heirs, and that each one was placed in exclusive possession of the parcel assigned to him or her."

In *Wildey* v. *Bonney's Lessee*, 31 Miss. 644, it is said: "The only question, then, upon which the competency of the evidence depends, is whether it is competent to show a partition by parol, between copartners or tenants in common. And there can be no doubt but that such an agreement, when carried out by the parties taking possession in severalty, is valid, and effectual to conclude the rights of the others against the respective parties so holding in severalty." See authorities cited.

In *Hazen* v. *Barnett*, 50 Mo. 506, the supreme court stated the rule in such cases as follows: "Although a parol partition is good between the parties when accompanied by possession, yet the equitable title only passes, which by adverse possession may ripen into a legal estate; and a party to such agreement has a right to have the parol agreement confirmed by a decree vesting in him whatever title the other party had in the premises." In 17 Am. & Eng. Enc. Law, p. 658, where the question under discussion is treated, we find this language: "That a parol partition, carried out and followed

by actual possession in severalty, of the several parcels, is valid, and will be enforced, notwithstanding the statute of frauds, on the theory that it has been removed from its operation by part performance, is growing in favor, and now seems to have been adopted by a large majority of the courts." See large number of authorities cited in foot notes.

Some of the authorities cited go to the extent that the parties, by such parol partitions, acquire not only the equitable, but the legal title as well, against their cotenants. But it is not necessary in this case to decide that question.

The district court evidently followed the doctrine so well stated in *Hazen* v. *Barnett*, quoted above, that the equitable title only passed by the parol partition found to have been made by the parties of the several parts of the land allotted to each, and that each party to that parol partition or agreement had "a right to have the parol agreement confirmed by a decree vesting in him whatever title the other party had in the premises."

In the light of the above authorities, we discover no error in the action of the court. This conclusion renders it unnecessary to treat other errors assigned, as they are involved in, and dependent upon, the question of law already discussed.

The order and decree appealed from are affirmed.

*Affirmed.*

DE WITT and HUNT, JJ., concur.