McGOWAN TOOF ET AL. v. LIDA V. BREWER ET AL.*

[3 South. 571.]

MARRIED WOMEN. *Partnership with husband. Coverture. Laws of state of residence. Personal liability for partnership debts. Liability of property in this state. Code 1880, § 1167.*

A married woman, authorized by the laws of the state of her residence to form a copartnership with her husband and incur personal liability for the partnership debts as if she were sole, cannot protect her separate property in this state from liability to partnership debts contracted in the state of her residence by reason of her coverture, since, under Code 1880, § 1167, a married woman may contract as freely as a *feme sole.*

FROM the chancery court of Marshall county.

HON. B. T. KIMBROUGH, Chancellor.

Toof and others, appellants, were complainants in the court below; Mrs. Brewer and another, appellees (husband and wife) were defendants there. The suit was an attachment in chancery; the court below sustained defendant's demurrer to the bill of complaint and dismissed the suit. The complainants appealed to the supreme court.

In 1882 and 1883 Mrs. Brewer and her husband were farming in Arkansas, where they resided, as partners and purchased supplies upon credit from Toof and others, merchants of Memphis, Tennessee, for use in their copartnership business. Being indebted to Toof and another for said supplies, Mrs. Brewer and her husband moved from Arkansas to Tennessee, and there executed notes to Toof and another to evidence the debt. After the execution of the notes, which have never been paid, Mrs. Brewer inherited considerable real estate in Mississippi, where-

---

* This case was decided February 20, 1888, but was never before officially reported. It is now so reported by order of the court, made January 30, 1911.

upon this suit was begun to subject her lands to the payment of the notes. She defended on the ground of her coverture.

*Henry Craft, George Gant* and *Addison Craft,* for appellants.

*J. H. Watson,* for appellees.

[The reporter has been unable to find the briefs of counsel, hence no synopses of them can be given.]

Cooper, C. J., delivered the opinion of the court.

By the Code of 1880 all disabilities of married women were removed, and with us they have equal power with a *feme sole* to acquire and own property, to convey it, to make all sorts of contracts, and to sue and be sued. We are no longer concerned about the separate estates in equity, or separate statutory estates of married women, nor the circumstances, extent, or manner in which they may be charged. There is therefore no public policy of the state which will preclude the enforcement here of any valid contract made in another state by a married woman, such as controlled this court in the case of *Bank v. Williams,* 46 Miss. 618. The controlling inquiry then, is what obligation, if any, rested upon Mrs. Brewer, under the laws of Arkansas, arising from the transaction with appellants? For if the dealings between the parties gave rise to no personal obligation, enforceable against her there, the foundation of complainants' suit is withdrawn: while on the other hand, if by the laws of Arkansas the complainants might have obtained a personal judgment against her in that state, and were not restricted to a proceeding against her separate estate in equity, or against her separate statutory estate as the debtor, that liability to a judgment *in personam* there is sufficient to uphold the present proceeding here. In determining this question, the decisions of the supreme court of that state are binding authority upon us, and, in the absence of decision by that court upon any question involved, we must assume that our own decisions upon similar

questions are right, and, because they are, that they would be the decisions of the courts of that state.    So much of the constitution and laws of the state of Arkansas as are pertinent to the question involved, are as follows:

"The real and personal property of any *feme covert* in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed, or conveyed by her the same as if she was a *feme sole,* and the same shall not be subject to the debts of her husband."    Const. 1874, art. 9, sec. 7.    The effect of this provision is to make all property thereafter acquired by a woman, who is or may become covert, her separate property, as effectually as if conveyed to her by deed to her separate use. *Ward v. Estate of Ward,* 36 Ark. 586.

"Sec. 4624.    The property, both real and personal, which any married woman now owns, or had conveyed to her by any person in good faith and without prejudice to existing creditors, or which she may have acquired as her sole and separate property; that which comes to her by gift, bequest, descent, grant or conveyance from any person, that which she has acquired by her trade, business, labor, or services, carried on or performed on her sole and separate account—shall, notwithstanding her marriage, be and remain her separate property," etc.

"Sec. 4625.    A married woman may bargain, sell, assign, and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services shall be her sole and separate property and may be used or invested by her in her own name; and she may alone sue and be sued in the courts of this state on account of the said property, business, or services."

"Sec. 4630.    Whenever a judgment shall have been recovered against a married woman, the same may be enforced by execution against her sole and separate estate or property to the same

extent and in the same manner as if she were sole." Act of April 28, 1873 (Mansf. Dig. 916, 917):

The act was amended by the act of December 15, 1875, and, among other amendments, it is declared that "The rule that statutes in derogation of the common law shall be strictly construed, shall have no application to this act." Mansf. Dig. sec. 4639. Where a married woman is a party to a suit, her husband must be joined with her, except in certain states of case, among which is where the action is between herself and her husband. Civil Code, sec. 42. Mansf. Dig. sec. 4951. It has been decided by the supreme court of Arkansas that a personal judgment may be rendered against a married woman transacting business under which her separate estate may be sold (*Trieber v. Stover,* 30 Ark. 727; *Chollar v. Temple,* 39 Ark. 238; *Walker v. Jessup,* 42 Ark. 163; *Abbott v. Jackson,* Id. 212), and that she may form a partnership with a person, other than her husband, to transact the business in which she is permitted by law to engage (*Abbott v. Jackson, supra*). We have not been referred by counsel to any decision of that state in which it has been decided that the husband and wife may or may not enter into partnership; nor do we think what has been said by the court of that state incidentally, in other cases, indicates that it intended to express any view on this subject. But it is said by counsel for appellee that, under such statutes, it is generally held that the husband and wife may not contract with each other, and that, partnership being a contract, the relation may not be formed between them. The position is supported by the text of Bish. Mar. Wom. sec. 435, and by that of Schouler, Husb. & Wife, sec. 316. The cases cited by Bishop are: *Lord v. Parker,* 3 Allen, 127; *Edwards v. Stevens,* Id. 315; *Lord v. Davidson,* Id. 131; *Knowles v. Hull,* 99 Mass. 562; *Bennett v. Winfield,* 4 Heisk. 440; *O'Daily v. Morris,* 31 Ind. 111.

Schouler cites also *Wilson v. Loomis,* 55 Ill. 352; *Montgomery v. Sprankle,* 31 Ind. 113. With the exception of the cases from Massachusetts, the authorities cited are foreign to the proposi-

tion they are relied on to support.    In Tennessee there is not, and never has been, any such statute, or if there has been, it certainly is not referred to in the case in Heiskell.    That case rested on these facts: One Bennett was a member of the firm of Winfield Read & Co.    This firm borrowed money from Margaret Moore.    Afterwards, in contemplation of marriage between Miss Moore and Bennett, a marriage contract was entered into between them, by which her separate property was secured to her separate use.    After her marriage with Bennett, she brought suit to recover the sum due to her by the firm.    The other members of the firm pleaded that, by reason of the marriage, the husband became owner of the demand and that he at least was released as debtor.    The court held that, under the marriage contract, the debt remained her separate property. *Wilson v. Loomis,* 55 Ill. 352, was a case in which a married woman embarked her money in trade, the husband having the management of the business as her agent, and devoted his time, labor, and skill, to the enterprise, which proved exceedingly profitable.    The stock in trade was levied on by creditors of the husband.    In a suit by the wife, it was held that the husband could not, as against his creditors, give to his wife the profits arising from his time, skill, and labor; the court saying: "The capital originally invested in the trade was increased by the labor of the husband, and then reinvested, and so on until it had increased three or four fold; and the property thus acquired by the labor and energy of her husband must be liable for his debts.    A married woman cannot engage in a general trade or business with her husband as managing agent, to which he must devote his whole time and energy, and yet all his earnings be beyond the reach of creditors."    In *Montgomery v. Sprankle,* 31 Ind. 113, and *O'Daily v. Morris,* Id. 111, it is distinctly stated by the court that there is no statute of that state modifying the common law rule that a married woman cannot bind herself by an executory contract, and that there was nothing in either case showing an intent by the married women to bind her separate

estate.   In the first case there was nothing in the facts having any sort of reference to a contract between husband and wife, of partnership or otherwise; in the other, an attempt was made to charge a married woman as a partner with her husband, because she had held herself out as such, but the point of the decision was that she could not make the contract sued on, either alone or as a member of a firm.   This disposes of all the cases cited by these writers except those from Massachusetts.   The first of these, and the one which controlled the others, is that of *Lord v. Parker,* 3 Allen, 127.   The section of the Massachusetts statute conferring power on a married woman to engage in trade is substantially that of Arkansas; but the section that permitted her to acquire property excluded the right to acquire it by gift from the husband.   Under the Massachusetts statute, the court came to the conclusion that she might not enter into partnership with her husband.   The grounds of that decision, as stated by the court in the case referred to, are: (1) Because the statute did not expressly confer the power, and, being in derogation of the common law, was not to be extended by construction; (2) the contract of partnership would make her property community property, and it would thereby cease to be her "sole and separate estate;" (3) the power would open a door to fraud upon creditors of the husband; (4) she could not, by the statute, receive a gift from the husband; (5) because the power to contract with the husband would necessarily carry with it the power to sue him, which would be contrary to the settled policy of the state. Let us now see how many of these reasons do not apply to the Arkansas statute.   The first does not, for the statute itself expressly repudiates and abrogates the rule that it is to be strictly construed, as being in derogation of the common law.   The second does not, for the court of Arkansas has decided that a married woman may enter into partnership with persons other than her husband, and thus her property may become community property as much as it would if the husband was the partner.   *Abbott v. Jackson,* 43 Ark. 212.   The fourth does

not, for by section 4624, Mansf. Dig., the right to acquire property by conveyance from "Any person in good faith, and without prejudice to existing creditors," manifestly refers exclusively to conveyances from the husband, for as to other persons these words would be surplusage. The fifth does not, for by the laws of Arkansas she may sue the husband. Civil Code, § 42; *Trieber v. Slover,* 30 Ark. 727. It is not true then, as stated by Bishop and Schouler, that, under statutes of this character, it is generally held that a married woman cannot enter into partnership with her husband. In a case in the district court of the United States for the state of Illinois, the contrary rule was announced, under the statutes of that state. *In re Kinhead,* 3 Biss. 405. See also Pol. Cont. 70. In New York, this question has frequently arisen, but has not, so far as we know, been directly passed on by the court of appeals. In the supreme court it has been decided both ways. In *Kaufman v. Schoeffel,* 37 Hun, 140. the fifth department of the supreme court held that a married woman could not enter into partnership with her husband. In *Graff v. Kinney,* 37 Hun, 405, the second department of the court held that she could. In *Fairlie v. Bloomingdale,* 38 Hun, 220, the third department of the court pretermitted a decision of the question, but stated that, if it were necessary to decide it, they would "Probably agree to the doctrine of *Graff v. Kinney."* In *Zimmerman v. Erhard,* 58 How. 11, the power to form the partnership was upheld. In *Noel v. Kinney,* 106 N. Y. 74, 12 N. E. 351, the language of the court would seem to imply that such a partnership might be formed. It is also pertinent to note that while the supreme court of Massachusetts denies to the wife the power to form a partnership with her husband, and denies to a creditor of a firm in which they were partners recovery against the wife, it has also decided that if the husband and wife are joint owners of a vessel engaged in trade, and of which the husband was in control, the husband and wife are jointly bound by contracts made by the husband. *Reiman v. Hamilton,* 111 Mass. 245.

We find it difficult to conceive of any public policy that would prevent the formation of a partnership between the husband and wife in a state in which her individuality is so completely provided for as to her dealings with others. If she may engage in trade, and, as an incident thereto, may enter into partnership with others, why may she not form that relation with her husband? If it be said, as by the supreme court of Massachusetts, that the power is not expressly conferred, the reply is that neither is it as to third persons; and yet it is held that with such third persons she may make such contract. The power is held that with such third persons she may make such contract. The power springs as an incident from the recognition by law of her separate existence, and from the capacity given her to engage in trade. A married woman could not at common law contract either with her husband or a third person, for her existence apart from his was not recognized. He and she were by that law one, and he was that one. But by the statute her individuality is preserved. She is one, and the husband is one. Each has the capacity to contract. Both may desire to contract. Partnership is a lawful subject matter of contract, and there is nothing in the law which, either expressly or by necessary implication, forbids them from contracting. If we reflect upon the extent of the changes wrought by the constitution and statutes, that they withdraw from the husband the ownership, control, disposition, and enjoyment of the wife's estate; that the same are secured to her as though she were a *feme sole;* that the right to her personal services, and the fruits of her labor, are denied to him, and given to her; that her will is freed from the dominion of his as to all property rights; that she may, without his consent, enter into the closest business relations with third persons—and if we add to this the declaration of the statute that the changes it has wrought shall not be restrained by the rule of construction that is ordinarily applied to statutes in derogation of the common law,—there seems to be but little force in the suggestion that by implication a disability as to

business transactions and contracts, springing from the common law notion of the unity of the husband and wife, still obtains. The construction put upon the words "sole and separate use," "sole and separate property," etc., in the statute by the supreme court of Massachusetts, and by the supreme court of New York in the case of *Kaufman v. Schoeffel,* whereby the conclusion is reached that it was intended to preclude any contract between husband and wife, is entirely unsatisfactory. To us it seems manifest that the sole purpose of these words is to preclude the marital rights of the husband as they existed at common law, and not to prevent the husband and wife from associating their effects in trade, either as joint owners or as partners. The property or estate of the wife may well remain her "sole and separate property," though it consists of goods, wares, and merchandise, book accounts, notes, or other evidences of debt, owned by a firm of which she and her husband are members. The man who is her partner may also be her husband; that his right to manage and dispose of the firm property—his title and possession—spring from his relation as partner, and not from that as husband.

We are of the opinion that, under the laws of Arkansas, Mrs. Brewer incurred an obligation to the appellants on which a personal judgment might have been rendered against her in that state, under which her separate estate might have been seized and sold.

The only remaining question is whether subsequently acquired property may be subjected to that demand. We deem it unnecessary to decide whether this question should be solved by the law of Arkansas or by that of this state. So far as we are advised, this question has not been decided by the courts of that state. In the absence of such decision, if the question is to be determined by the law of Arkansas, we must assume that it would be decided by the court of that state, as we have decided, that such property may be taken in execution. *Taggert v. Muse,* 60 Miss. 870.

The decree is reversed, demurrer overruled, and leave given to defendant to answer in thirty days after the mandate shall have been filed in the court below.

*Reversed.*